## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eddie Jackson Pringle, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:11-2152-RMG |
| vs. | ) |
| | ) |
| Michael J. Astrue, Commissioner | ) |
| of Social Security, | ) **ORDER** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 16, 2013 recommending that the Commissioner's decision be reversed and remanded. (Dkt. No. 15). The Commissioner filed objections to the Magistrate Judge's Report and Recommendation. (Dkt. No. 17). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

-1-

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

-2-

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical

-3-

professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

A Social Security claimant who satisfies the legal requirements for a work related disability may nonetheless be denied benefits under some circumstances if he has been noncompliant with medical treatment. *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985). The Fourth Circuit has ruled, however, that "[i]f noncompliance is ultimately to be found the basis for denying benefits," the Commissioner carries the burden of producing evidence and making a "particularized inquiry" that the claimant's condition was "reasonably remediable" and he "lack[ed] good cause for failing to follow a prescribed treatment plan." *Id.* at 990-91; *Fleming v. Barhart*, 284 F. Supp. 2d 256, 274 (D. Md. 2003). "Essential to a denial of benefits" for noncompliance is a finding that if the claimant followed his prescribed treatment he could

-4-

return to work. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). Further, a claimant's lack of compliance with prescribed medical treatment caused by poverty or lack of access to medical care cannot be the basis for denial of Social Security benefits. *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

### Discussion

Plaintiff's claim of disability benefits arises primarily on the basis of significant cardiac disease which he asserts produces shortness of breath with minimal exertion, limited mobility, frequent episodes of syncope, and fatigue. Transcript of Record ("Tr.") at 37, 42, 45, 53. The claimant underwent cardiac stenting on February 5, 2008 following a finding of a totally occluded left anterior descending artery (commonly referred to in medicine as the "widow maker") and placement of a pacemaker on August 8, 2008. Tr. at 379, 381-82, 434. Plaintiff was documented in October 2007 with an ejection fraction of 25-30% but by May 2010 his ejection fraction had declined to 16%. Tr. at 388-89, 555. His treating physicians have diagnosed him with "severe congestive heart failure," "severe cardiomyopathy," and "severely reduced LV systolic function." Tr. at 555, 562-63, 567. Because of Plaintiff's relative youth[1] and significant cardiac pathology, his medical records reflect consideration of him as a potential heart transplant patient. Tr. at 328, 388. As Plaintiff accurately observed at his administrative hearing, "I have a bad, bad heart." Tr. at 49.

#### A. Treating Physician Rule

Plaintiff has two primary treating physicians, Dr. Barry Katz, a family physician, and Dr. Joseph Salerno, a cardiologist. Dr. Katz has treated Plaintiff for more than 8 years and Dr.

---

[1] Plaintiff was born on December 27, 1965, making him 47 years old. Tr. at 517.

-5-

Salerno has been managing his cardiac condition since 2006. Tr. at 39. Both submitted responses to a questionnaire which addressed specifically Plaintiff's eligibility for disability based upon chronic heart failure. Tr. at 514-15, 528-29. Under Step Three of the five step sequential process, a patient with chronic heart failure may be deemed disabled based upon an objective showing of systolic or diastolic failure and the presence of certain persistent symptoms of heart failure that seriously affect the claimant's activities of daily living. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02.

Dr. Salerno indicated that Plaintiff did have systolic failure with an ejection factor less than 30%, clearly meeting the first portion of the 4.02 Listing for chronic heart failure. Tr. at 528; § 4.02(A). The medical record supports this opinion, with the last documented ejection fraction of 16% and an echocardiogram interpretation stating that Plaintiff's "left ventricular systolic function is severely impaired." Tr. at 551-53, 555, 568-69. Dr. Salerno further opined that Plaintiff satisfied the second portion of the 4.02 chronic heart failure Listing by having persistent symptoms of heart failure which seriously limited his ability to "initiate, sustain, or complete activities of daily living." Tr. at 528; § 4.02B. Dr. Katz, which the record shows had more than 20 office or hospital visits with Plaintiff between 2006 and 2010 (Tr. at 308-23, 492-93, 517-20, 523, 525-26, 539, 542, 543-48, 560-63), also stated in his response to the Listing questionnaire that the claimant had persistent symptoms of heart failure that seriously impaired his activities of daily living. Tr. at 514.[2]

---

[2] Defendant argues that the record cannot support a finding of compliance with a § 402 Listing because there is no certification by a physician under § 402(B)(1) that an exercise test would present a significant risk to the claimant. (Dkt. No. 17 at 1-3). However, Drs. Katz and Salerno affirmatively certified compliance with the § 402(B)(1) criteria in their responses to their questionnaires, which include the provision that an exercise test would present a significant risk

The Plaintiff offered testimony at the administrative hearing that corroborated the opinions of his treating physicians regarding the impact of his cardiac disease on his ability to engage in normal life activities. Plaintiff testified that the process of making his breakfast in the morning so fatigues him that he is forced to lay back down when he finishes. Tr. at 42. He further testified that if he spent five minutes sweeping the floor he would have to stop and rest for 30 minutes because "I just can't do so much." *Id.* He also stated that he probably cannot walk more than 10 minutes at a time because of his compromised cardiac function. *Id.* He also experiences frequent episodes of syncope when he rises suddenly from a seated position. Tr. at 53.

As part of the Social Security disability application process, Plaintiff was sent for an examination by Dr. David W. Robinson, who had not previously treated or evaluated the claimant. Dr. Robinson noted the patient's history of exercise intolerance, shortness of breath, and his inability to walk up inclines or stairs or to ambulate as long as a quarter of a mile. Tr. at 470. He also documented that Plaintiff may have "difficulty with certain chores around the house that require physical exertion." Tr. at 472. Dr. Robinson also observed that Plaintiff may have difficulty dealing with "work pressures" because of "the current status of his cardiomyopathy and congestive heart failure." Tr. at 473.

Plaintiff's application for disability benefits was also evaluated by two chart reviewers, Dr. Jean Smolka on February 27, 2009, and Dr. William Cain on November 11, 2009. Tr. at 474-80, 500-07. Neither physician performed any physical examination of Plaintiff or had ever provided him any treatment. Both physicians indicated that Plaintiff could stand or walk at least

---

to the Plaintiff. Tr. at 514, 528.

two hours in an eight-hour work day, could sit for six hours, and had an unlimited ability to push or pull. Tr. at 475, 501. Dr. Cain criticized the evaluation of the examining consultant, Dr. Robinson, regarding limitations on Plaintiff's walking ability. Tr. at 506. Dr. Cain appeared to dismiss Dr. Robinson's finding of limited ability to ambulate but observed "he does not have a continuing doctor to patient relationship with the claimant and this was a one time exam." *Id.*

The ALJ found that Plaintiff's severe impairments included chronic heart failure and cardiomyopathy but rejected the opinions of the treating physicians, Drs. Salerno and Katz, that the claimant had persistent symptoms of heart failure that limited his activities of daily living. Tr. at 20-21. The ALJ further concluded that he gave the opinions of the treating physicians "little weight" because treatment records show the claimant "is able to perform his activities of daily living and could work without much difficulty, especially when he is compliant with his medication." Tr. at 24. No citation to the record was given by the ALJ to Plaintiff's alleged ability to work "without much difficulty," and this Court, twice reviewing this full record, could not find substantial evidence in the record to support such a finding.

The ALJ gave only "some weight" to the opinions of the examining consultant, Dr. Robinson, but appeared to disregard his conclusions regarding a limited ability to ambulate or the potential difficulty of the claimant handling work pressures due to his cardiac condition. Indeed, the ALJ observed that Plaintiff's cardiac condition would only provide a "slight limitation [on] physical activity." Tr. at 24.

The ALJ did provide, however, "great weight" to the chart reviewers, Drs. Smolka and Cain, because their "opinions are consistent with the claimant's treatment notes and the remaining medical evidence of record." Tr. at 24. The ALJ further noted that the chart reviewers

-8-

"assessments reflect the finding that the claimant is apparently well-compensated when she is compliant with her medication." Tr. at 24 (gender error in the original). The ALJ concluded that Plaintiff was able to perform sedentary work. Tr. at 21.

The ALJ's evaluation of the opinions of Plaintiff's treating and examining physicians falls strikingly short of the regulatory requirements commonly referred to as the "Treating Physician Rule." 20 C.F.R. § 404.1527. As discussed above, the regulation provides that if the treating physician's opinions are not given controlling weight, they will be evaluated utilizing a variety of factors, including the physician's examining history, treatment relationship, nature and extent of treatment, supportability, consistency, and specialization. *Id.* §§ 404.1527(c)(1)-(6). For instance, the regulation states that "generally, we give more weight to the opinions from your treating sources" and "more weight to the opinion of a source who has examined you." *Id.* at (c)(1),(2).

The decision of the ALJ fails to reference the long and involved treatment and examining history of Drs. Salerno and Katz with Plaintiff or the fact that among all of the physicians providing opinions regarding the Plaintiff's cardiac condition only Dr. Salerno is a cardiologist. In fact, the only regulatory factor referenced by the ALJ in rejecting the opinions of the treating physicians is the issue of supportability. Tr. at 23-24. The Court notes that the ALJ failed to address in any detail the striking findings documented in the hospital admissions of May and September 2010, which support the opinions of the treating doctors. These include the ejection fraction of 16% in the nuclear stress test of May 29, 2010, the diagnosis of "severe congestive heart failure" of September 29, 2010, the diagnosis of "severe cardiomyopathy" of September 30, 2010 and the echocardiogram report of September 30, 2010 finding "severely impaired" left

-9-

ventricular systolic function. Tr. at 555, 562-63, 566-67, 568-69.

The ALJ also failed to provide any deference to the findings of Dr. Robinson, the examining consultant, regarding Plaintiff's limited ability to ambulate and potential problems handling work pressures because of his severe cardiac disease. Tr. at 472-73. Instead, the ALJ "cherry picked" those portions of Dr. Robinson's report that tended to be favorable to the agency's denial of benefits and gave apparently no weight to the highly salient issues of mobility and the potential difficulties Plaintiff's cardiac impairments may have on his vocational function.

Turning the Treating Physician Rule on its head, the ALJ gave "great weight" to chart reviewers who had no examining or treating history with the patient and were not specialists. In regard to the issue of supportability, the Court notes that the chart reviewers completed their reports in 2009 and, thus, did not have access to the findings, opinions, and diagnoses set forth in the medical reports from the May and September 2010 hospitalizations.

In summary, the Court concludes that reversal and remand are necessary to allow the fact finder to evaluate the opinions of the physicians under the regulatory standards set forth in § 404.1527(c). To the extent that deference is not provided to the opinions of the treating physicians, the ALJ must evaluate the opinions under the § 1527(c) standards and articulate good reasons for rejecting the treating physicians' opinions.

## B. Noncompliance with Medical Treatment

The ALJ mentioned on at least five occasions in her decision that the claimant had been noncompliant with his treatment, suggesting that noncompliance supported a denial of disability benefits. Tr. at 22-24. The record does contain some references to patient non-compliance with prescribed medications, diet, and use of a CPAP machine for his sleep apnea. Tr. at 327-28, 400,

-10-

436, 531. The medical record and common sense certainly suggest that Plaintiff would be benefitted from compliance with the medical regime, but disqualification of an otherwise eligible Social Security claimant from benefits for noncompliance requires far more. First, the burden is on the Commissioner to conduct a "particularlized inquiry" to demonstrate that the claimant's disabling condition is "reasonably remediable" by compliance with prescribed treatment. *Preston*, 769 F.2d at 990. This means that with compliance Plaintiff could return to work. *Rousey*, 771 F.2d at 1069. Second, the Commissioner must demonstrate that the claimant lacked "good cause for failing to follow a prescribed treatment plan." *Preston*, 769 F.2d at 991. Poverty and lack of financial resources cannot be the basis for the denial of disability benefits. *Lovejoy*, 790 F.2d at 1117.

The ALJ states that Plaintiff "could work without much difficulty" but makes no reference to the record to support this finding. Tr. at 24. This finding is clearly contrary to the opinions of Plaintiff's long serving treating physicians and the objective diagnostic evidence indicating severe cardiac disease, including "severely impaired" left ventricular function documented by an echocardiagram of September 30, 2010 and an ejection fraction of 16% documented by a nuclear stress test of May 29, 2010. Tr. at 514-15, 528-29, 555, 568-69. Further, the report of the examining physician, Dr. Robinson, notes the claimant's limited capacity to ambulate and perform household functions and potential problems with "work pressures," all secondary to "the current status of his cardiomyopathy and congestive heart failure." Tr. at 470, 472-73.

The record contains no particularlized inquiry or discussion concerning how compliance with diet, medication, or the CPAP machine would allow Plaintiff to overcome his severe

cardiomyopathy and left ventricular dysfunction. To the extent the Commissioner contends that the Plaintiff can diet or medicate himself out of his severe cardiac disease and seeks to deny Plaintiff disability benefits on the basis of noncompliance, such an "particularized inquiry" is essential. From the Court's review of the record, the Plaintiff's noncompliance appears primarily present in the 2006 to mid-2009 period, and subsequent entries in the record suggest efforts to comply with the diet, utilization of the CPAP machine, and no reference to medication noncompliance. Tr. at 328, 400, 436, 531, 532. There are also entries suggesting medication non-compliance because of inadequate financial resources. 487-88, 494.

Therefore, on remand, if the Commissioner asserts that Plaintiff was non-compliant and his condition is "reasonably remediable" with diet and medication, he needs to identify substantial evidence in the record to support such a finding. The Court finds this present record falls impressively short of carrying that burden. Further, to the extent the Commissioner seeks to rely on the opinions of chart reviewers to support the finding that Plaintiff could return to work "without much difficulty" with treatment compliance, he should be mindful of the deference afforded the opinions of treating and examining physicians under the Treating Physician Rule, § 404.1527(c), as discussed in this order.

**Conclusion**

Based upon the foregoing, the Court hereby **REVERSES** the decision of the

Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion

pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

February __, 2013
Charleston, South Carolina

-13-